JOSEPH MCPHERSON et al.

*v.*

BENJAMIN F. WALTON et al.

1. A contractor who agrees to take some of the buildings he erects in part payment of his work, may sell them *before* all the work is done. The proper course to pursue where the contractor has so sold the houses, and his vendee is in possession thereunder, but the owner has never conveyed, stated.

2. An order for a *general* debt of the contractor, accepted by the owner, is not entitled to priority of payment, where the balance due the contractor is insufficient to satisfy all the subsequent lien claimants.

3. What amounts to an *acceptance* of an order by the owner.

4. The whole claim is impaired by claiming more than is due, or inserting items for work not lienable, *e. g.*, flagging, or where the time of payment was extended by taking the contractor's notes.

---

*Mr. W. D. Holt*, for complainants.

*Mr. James S. Aitkin*, for Mrs. Conner.

*Mr. E. T. Green*, for McPherson & Maharg.

*Mr. G. D. W. Vroom*, for Hughes, Hutchinson & Co.

*Messrs. Howell & Brother*, for Samuel Heath.

*Mr. James Buchanan*, for S. B. Packer.

*Mr. F. C. Lowthorp*, for J. P. Baily.

*Mr. D. Cooper Allinson*, for J. P. McGalliard.

McPherson v. Walton.

Bird, V. C.

In this case I find that the considera-
tion which the complainants agreed to
pay for the houses to be built by the
defendant Walton, independent of
extras, was.........  .......... ............          $20,840 00
I find that Walton did extra work to
the value of.....  .........  .........  .........            1,073 48
                                                    ───────────
                                                    $21,913 48

I find that the complainants paid Wal-
ton, cash ............ .....  .........  .........  $12,870 60
And his due-bill.. ...... ...... ......  .........    2,040 00
To which is to be added the cost of com-
pleting the buildings after his failure,    3,458 01
                                            ───────────  18,368 61
                                                    ───────────
Showing a balance of..................... ......            $3,544 87

This would be the cash due to Walton on the contract, had
not the contract made provision that $6,000 of the considera-
tion-money should be paid in houses.  The contract provides
that on final settlement Walton shall take two of the houses on
Wall street, at $6,000, in payment.  The title to these houses is
still in the complainants, and the amount due Walton is not
equivalent to the value put upon the houses in the agreement by
$2,455.13.

Because of Walton's failure to complete his contract, a number
of material-men, having claims which Walton refused to pay,
presented their claims to the complainants and demanded pay-
ment.  The claims greatly exceed the balance due ($3,544.87).
But this balance is in the two houses and lots to be conveyed to
Walton by the contract.  And the case is complicated by the
fact that Walton agreed with one J. W. McKelvy to convey one
of the Walton houses to Mrs. Conner for $2,500.  I find that
the complainants had knowledge of this agreement, and in the
law assented to the transfer; I do not mean to say they assented
to the price.  Mrs. Conner was put into possession.  Walton

had a right to make sale of his interest in these two houses. I know of no principle embodied in the mechanics lien law, nor in any other, that offers a bar to such a transaction. Nor was he obliged to wait until the contract between him and complainants was complete, and a final settlement concluded. The complainants could not interfere, nor could creditors of Walton. The rights that may spring up between laborers and materialmen, on the one hand, and the complainants on the other, under such a contract, filed, as this was, under the statute, is perhaps a more difficult question. It is not so clear to my mind that the complainants were not bound to retain the $6,000 until the final settlement, or at least until a reasonable time after the contract was completed. However, it may be claimed that it could make no difference in the result, which is perhaps the truth.

On November 1st, 1879, the defendant Walton gave an order on the complainants for $1,000 to McPherson & Maharg, material-men. McPherson & Maharg now claim that they are entitled to be first paid the amount of this order out of the funds still due on this contract to Walton. It is claimed by counsel that this was an assignment of $1,000 of these moneys to McPherson & Maharg. This view is resisted. It is said that the order was general, having no application to any certain funds, and that at the time of its acceptance, if it was accepted, there was no such amount due on this particular contract. As to the first point, Mr. McPherson the defendant, says:

"That it was distinctly understood at that time that this order was not in payment for any lumber that went on Wall street; he still owed us that amount and $1,164 on our books over that amount; that he gave me the order for, and he owed me $1,250 on notes that had been furnished within four months from the date that I made this thing, making $3,400; the order was not for lumber furnished for the Wall street or Clinton street houses; it was a general order."

With such a clear and emphatic statement as this from Mr. McPherson, it is quite apparent that the other material-men are justified in resisting the payment of this $1,000 order out of the funds in hand.

As to the next point, the acceptance. He took the order at

once to one of the complainants, Mr. Joseph McPherson, who said " there was no money coming to Mr. Walton at that time," and " out of the first money due Mr. Walton he would pay this order." There was no formal acceptance, but the complainant, Mr. Joseph McPherson, took possession of the order, and held it until the day of hearing, over three years. When asked whether or not Joseph paid him the cost, he answered :

" No, sir, there was no money coming to Mr. Walton; he gave me, after some days, a note ' for $1,000.' He gave me this note for $1,000, which I supposed was for the order; went to the office and credited Benjamin F. Walton with $1,000 on our books, but my brother's understanding of the matter was, as I afterwards learned, that he loaned me that $1,000 to assist me, as I needed money."

I find from these facts that the complainants accepted that order, and that the defendants McPherson & Maharg were entitled to the payment thereof out of the first money due to Walton on that contract. That order has not been paid ; I shall advise a decree directing its payment out of the funds in the hands of the complainants due to Walton on the contract named.

Besides the amount of this order, other large sums of money were due McPherson & Maharg. On November 3d, 1879, three days after they obtained the order, they gave notice to the complainants that they should look to them for the payment of $1,000, for materials furnished to Walton in the construction of the houses above referred to. This notice was given under the third section of the act respecting mechanics liens. The other material-men resist this claim also. They insist that every such demand is founded on a request of the debtor to pay, and of a refusal by him, of a sum of money actually due, and that in this case there was not $1,000 due, if anything. The views expressed by the chief-justice in *Reeve* v. *Elmendorf, 9 Vr. 125, 133,* very emphatically sustain this view of the statute. His language is : " A privilege to make exorbitant and ill-founded claims, and on a refusal of payment to intercept such sums and hold them in the hands of the owner an indefinite time, would be simply an instrument of vexation and oppression. The

statute says the workman or material-man shall give notice of the contractor's refusal to make payment, and of the amount due to him or them and so demanded; and it proceeds to authorize the owner thereupon to retain the amount so due and claimed. Obviously, then, the amount demanded must be the amount due. As the amount claimed is to be retained by the owner, it would be a sheer injustice to allow more to be claimed than is justly due. If the workman or material-man claims therefrom more than has in fact been earned by him, such exaggeration is, I think, fatal to his right to use the statutory procedure against the owner."

These plain, sensible and business-like rules settle this branch of the case against McPherson & Maharg. They had taken the order November 1st for $1,000, and although the defendant McPherson says it was on the general account, yet the order itself expressly says it was to be charged against Walton's account respecting these houses, and it nowhere appears that the complainants had any other account with Walton. I say they had procured that order November 1st, when the defendant McPherson admits there was nothing due to Walton from complainants, and on the 3d of November he makes this demand of $1,000, when the order had not yet been paid nor formally accepted. Besides this, the statement of account, showing all the materials furnished to their particular houses, offered in evidence, presents, in the aggregate, only $1,144.22, without crediting the order, leaving, over and above the order, only $144.22, including therein two items furnished November 5th, and also including several items which may not belong in that list at all. Plainly, then, since the order is accounted a valid claim, it is my duty to advise the rejection of this one.

We next come to the claim of Hughes, Hutchinson & Co., for $1,500, which was made of the complainants January 2d, 1880, at twelve o'clock and forty minutes. This claim is resisted by other material-men, not because Walton did not justly owe them for materials furnished on this contract to that amount, but because that amount was not due at the time of the demand and notice. It is said that he truly owed them, but that the time for payment had been extended by Hughes, Hutchinson & Co.,

McPherson *v.* Walton.

by accepting notes which had not yet matured. And *Dey* v. *Anderson, 10 Vr. 199,* is relied on.

The value of the goods furnished was $1,630.52, from May 29th, 1879, to January 2d, 1880. Including this, they had an account against Walton, at this time, amounting to $5,811, for $3,762 of which they had taken and held Walton's notes. These notes were given from time to time on the general account, and, it is admitted, included large portions of the items of material furnished for these houses. It is also admitted that these notes all matured after the demand and refusal. Under the decisions in our own courts, then, these facts would seem to exclude all necessity for further inquiry, and to oblige me to advise against the claim of Messrs. Hughes, Hutchinson & Co.

J. P. McGalliard & Co. filed their claim with complainants January 2d, 1880, and notified them to retain the amount out of any moneys due Walton. The claim was for $1,300. This amount was not only not due to him from Walton on account of these houses, but the whole claim was embraced in a note or notes which had not yet matured. Hence, further consideration of this demand would prove unavailing.

I shall advise a decree in favor of the payment to Samuel Heath of the sum of $123.73, with interest from January 2d, 1880, and of $326.82, with interest from January 13th, 1880, next after the payment of the order for $1,000 given to McPherson & Maharg.

The defendant Samuel B. Packer gave three separate notices to the complainants and directed them to retain the amounts named in each; one of them was for $104.15; one for $450, and one for $368.65. The first two were served January 3d, 1880, and the last January 6th. It is unfortunate for the first one that it contains items amounting to $69.74, for materials for flagging the sidewalks in front of the houses named, which, I think, are not proper for such a claim. This obliges me to reject the first claim, under *Reeve* v. *Elmendorf, supra.*

The same principle of construction condemns the third claim. The noxious items are small, indeed; one being " 2 flaggers ¾ day at $2.50=$1.80," and one " 1 laborer ½ day at $1.50=.75," but

the statute is not to be construed by numbers or quantities, but upon principle. Upon this intelligent view, Walton is as well justified in refusing a bill that has an excess of $2.55 as of $255. And in such a case, on no conceivable grounds could the complainants justify a payment of any part of the claim under the statute.

The claim for $450 stands without any such weakness. I shall advise its payment.

Fletcher Coleman presented a claim for $105.20, and having been refused payment by Walton, he gave the complainants notice to retain that amount. I will advise the payment of that claim. His claim matured or was made complete, under the statute, February 24th, 1880.

Josiah T. Baily had an account, amounting to $856.43, against Walton, for materials furnished him to go into these houses. He demanded payment of Walton April 7th, 1880, and he refused to pay; of this refusal he at once gave notice to complainants and requested them to retain that sum. I think this claim is free from objection, and advise its payment with interest.

I will advise a decree directing the sale of the two Wall street houses by a master of this court, unless Mrs. Conner pay into court $500 for the lot purchased by her of Walton within thirty days from a service of a copy of the decree which shall be made in this case upon her, and unless Benjamin F. Walton pay into this court the sum of $3,000 within thirty days from the service of a copy of the said decree. Both Mrs. Conner and Walton will be required to pay interest on the said sum, respectively from the 1st day of April, 1880. Upon the payment of these moneys, the complainants will be required to execute a deed or deeds in accordance with the terms of their contract. If Walton or his assigns fail to comply with this provision, then, upon a sale, this court will direct the execution of proper conveyances.

I will advise that the claims be paid in the order in which I have considered them. Those claimants who have prevailed are entitled to costs out of the fund; those who have not, must pay their own costs.